We'll go right to the first case on calendar, United States v. Greco. Good morning. Good morning, Your Honor. May it please the Court, my name is Harry Sandick. I'm a partner at Patterson, Belknap, Webb & Tyler, and I'm handling this appeal pursuant to a CJA appointment by this Court. Mr. Greco's conviction should be reversed and the case remanded for two particular reasons that I'd like to focus on today, a Crawford error and a hearsay error. First, with respect to the Crawford issue, at my client's trial, the government offered an autopsy report without calling its author as a witness. The government called a different medical examiner and allowed this testimony and the admission of the report over a defense objection. And Crawford and its progeny, in particular this Court's decision in James, make clear that a certified autopsy report like the one admitted here, created under the circumstances present here, is testimonial and therefore should not have been offered at trial. On the hearsay issue, Greco intended to testify about a threat made to him by Ingram, one of the government's cooperators. The district court ruled that that was hearsay, precluded the defense testimony, and concluded that no possibility of any instruction to limit the offered testimony to its purpose, which was not for a truth purpose, but to show the impact on Greco's state of mind by statements made by Ingram. These errors were prejudicial and the government- How does Greco's state of mind have relevance to his criminal liability? Sure, Greco's state of mind was relevant here because of certain aspects of the government's case, which government depended on to corroborate its central evidence, which was the two cooperators. So to take each piece, Greco made false statements about his conduct to the police. The argument that the defense wanted to make is that the reason why he made those false statements were not in order to avoid culpability for the murder, but because he was afraid of Ingram harming him. That Ingram said to him something to the effect of, we can either make money together or something bad is going to happen to you. But didn't that get into evidence? Well, a portion of his- The threats came into evidence. So the ruling did not preclude the argument that he acted because he was intimidated by Ingram. Well, that's correct, Your Honor, that he did testify that he acted because of a fear of Ingram. But without explaining the particulars of why he was afraid of Ingram, the testimony lacked credibility. The government drove a truck through it during its summation saying, basically, why does it make any difference that he was afraid of Ingram? But if this additional testimony had been offered, it would have made very clear that the reason he was afraid of Ingram was because of what Ingram told him about the murder of Ennis. Well, Ingram had already testified, hadn't he? Ingram had already testified. And the jury knew that Ingram had pled guilty, was awaiting sentencing on the murder charge, but that he had pled guilty for some form of liability with regard to the murder itself, hadn't he? That evidence was before the jury as part of the usual kind of pulling the tooth of the cooperator's problem. The problem here, though, is that the jury didn't know the specifics of this conversation between Greco and Ingram. Greco's attorney could have asked Ingram. Could have asked Ingram, and Ingram would have, Lord knows what Ingram would have said, but the government might have been surprised if Ingram said, yeah, I'd threaten the hell out of him if he talked about this. That question could have been asked. So to offer it, you have to have the declarant not available. The declarant was available. Well, this wasn't being offered as a declarant on available exception. This was being offered as non-hearsay, that under Rule 801, if a statement isn't being offered- But it's offered, it is offered for the truth of its contents that the threat was made, right? Well, but the threat itself isn't a statement of truth or non-truth, but the embedded factual content in it, the government argued- It's true, the reason why it's offered is to say that Ingram killed the guy.  The defense said, we would, of course, have an instruction to the jury that the statement is not coming in for the truth of the matter, only for the impact on state of mind. The government makes that argument all the time. But it's offered to, it seems so attenuated to me, in a way, to appreciate it. And it seems so much easier to understand it in the way the jury would understand it, which is what the judge was reacting to. Is that, look, you can't really say that this was to explain how he was behaving. His behavior may have been unusual, and he wants to explain it. But the explanation has so much prejudice to it that it outweighs its probative value. And therefore, I'm not going to let it in. Well, Your Honor, that type of analysis was not precisely what the district court did here. The district court said repeatedly that it believed that this was hearsay. It came in the next day after the colloquy in which it excluded it. And I don't have a transcript site, but the court cited the case called Occiuto from the First Circuit. Occiuto is a case where the defendant knew that the statement was hearsay, wanted it offered for the truth purpose behind the statement, and very different set of facts. And so it's not clear from the record here where the district court said over and over again, this is hearsay. That the district court actually was applying Reyes, the test that the government says in its brief should have applied. But no one mentioned Reyes or anything like Reyes. The district court made a hearsay ruling. We'll concede that in the course of that ruling, there were points of tangency between what the court said and Reyes. But the court did not make a Reyes analysis. To turn briefly to the Crawford issue. The question of whether a medical examiner's report is testimonial is one that has gone back and forth in this court and in the Supreme Court. I guess our position now is sometimes yes, sometimes no. That does seem to be the position, that there isn't a bright line rule. What's the rule? Well, it's a rule that requires case specific analysis. I don't know whether it's a great rule or not. I think like Judge Corman are not happy with us, or maybe I won't make it personal. But it seems to me now a district court judge has to do some kind of analysis every time about the circumstances of the crime and the investigation and how soon the examiner gets called in. Someone who dies in their sleep is different from someone whose head is half cut off. It does seem as if that and also the role of the Westchester medical examiner when compared to the medical examiner's offices that were at issue both in New York and an overseas one in James. Are the relevant tests, and we candidly concede there's some, the law is not as clear as it could have been. I think Justice Kagan- So it's not your fault, so go ahead, I apologize. Well, on the law as we have it, and that existed at the time of trial as well, under James, the statement was testimonial. And the reason why it was testimonial was because the Westchester medical examiner is part of the law enforcement structure under the Westchester Code. The medical examiner even has the authority in section 273.161 to issue an arrest warrant. Her audience in the report is law enforcement. And in James, the court said the key consideration is the relationship between the medical examiner and law enforcement. I ask you, could you have called the medical examiner or actually performed the autopsy? I don't know whether that was tried or whether that person was within the reach of the court's subpoena power. The record, as far as I can tell, is silent on the question of why the government decided to call this- Suppose he was available. Could you have called him and does that make a difference? Because you would have had a right to have called him, arguably, as a hostile witness and cross-examined him. Well, I think if the witness could have been called and cross-examined, I'm still not sure that that gets the government over the Crawford threshold, which is that they are offering a medical examiner report and related testimony. The report and testimony is- You're talking about the confrontation clause, and you could have confronted the witness, who was, according to you, the declarant, the hearsay declarant. I guess the question is whether there is an exception in the Crawford case law that says that if the defense has the right or the opportunity to call the declarant, then the government essentially is absolved of any Crawford violation. I'm not familiar with that principle. I agree that there's a certain poetic logic or poetic justice to it, that if you can call the person, why not call them? But the government was the proponent of the evidence. And if it violated Crawford, it shouldn't be the defendant's responsibility to go find the declarant and bring them- You're talking about violating Crawford, and I'm talking about violating the Sixth Amendment right of confrontation, which includes the right to call witnesses. I agree that it does include that right. But if the government is the proponent of this evidence, then under the Sixth Amendment, the government should only offer non-testimonial evidence or should themselves bring in the witness. We don't know why, from the record, why this was done. It could have been a neutral reason. It could have been because the medical examiner didn't include a time of death. And in a case like this, the time of death was an important issue, and that may have well been the reason. It was an important issue, but as I read it, the witness who actually testified left it open between the evening of, I forget, the 24th and the next day. So it helped you, and also helped you that there was nothing in the coroner's report that indicated otherwise. Well, I guess the question is, should the government have been allowed to have presented the report and the related testimony without also having presented the declarant? I know from the government's brief in footnote three and from case law that there are times when Crawford and other types of evidence, but that problem is inherent in all of the constitutional criminal rights. They make things harder. Why wasn't this harmless error in any event? Well, the reason why it wasn't harmless error is because this was a case that was heavily dependent on the boyfriend, girlfriend, cooperator team, and there was no DNA or physical evidence. I'm sorry, Your Honor. This has nothing to do with the government witnesses. This dealt with the cause of death, which could not possibly have been an issue, and the time in which the person who did testify left open a period of time, which was perfectly consistent with what I think your defense would have been or was. Well, Your Honor, I don't believe it can be said beyond a reasonable doubt that the error did not contribute to the jury's verdict. Because the government was offering essentially the only physical forensic evidence it had in this trial. And it came through a witness who shouldn't have been there. A key aspect of the medical examiner's report, the absence of the time of death and what the medical examiner actually thought, the one who actually conducted the autopsy thought, was never put before the jury. If that evidence and what was put before the jury was something that corroborated the defendant, I'm sorry, the government's cooperating witnesses. The government says in its brief that essentially in its post-arrest statement, your client essentially confessed. He said the plan wasn't for him to die, naming presumably the victim. It was about the money, that it was just so fast, and if I'm lucky, I'll be locked up for the rest of my life. Well, what- Why did that leave open? What the defendant at trial argued, that this statement was not a statement confessing to having carried out the murder as the government proved it, but to playing a part in Ingram's murder of Ennis. That is how that was presented by the defense. You've received some rebuttal? Yes, I have. Thank you very much. Thank you. May it please the court, my name is George Turner, and I'm an assistant US attorney in the Southern District of New York. I represent the government on this appeal, and I also represented the government in proceedings below. The autopsy report admitted at trial was not testimonial because it was not prepared for the primary purpose of creating evidence for use at a later trial. Why did you create this issue? Why didn't you call the actual, the coroner who actually performed the autopsy? Your Honor, that information is not in the appellate record, and we do submit that it is immaterial to the confrontation analysis, but we can inform the panel that it was a matter of trial strategy related to witness presentation. Well, if you're offering this idea of this primary purpose, that means that you could report that's prepared in investigating a crime because the identity of the assailant or the identity of the perpetrator is not known, then it does not have a potential for testimonial nature to it. Is that it? That is one of the factors that can be looked at in the primary purpose analysis. But I think that the appellant's focus on the fact that foul play was evident from the condition of the victim's body. Right. That is, the focus on that point misapprehends the relevant inquiry. The relevant inquiry is not. It's an interesting thing you ask us to do. So you're willing to lay your money down and say, and have us decide that the West Chester County, am he, in light of all of his authority, including his arrest authority, his primary purpose is not criminally investigative. And so therefore, so you're taking the risk of having a rule that says that it is. And therefore, is always testimonial regardless of what the circumstances under which it's conducted. Your Honor, we do submit that the report here was not testimonial because the parallels between the relationship between the West Chester office. Let's presume we say that he's like an investigative agency, he can arrest, he or she can issue subpoenas, they can conduct hearings. They're responsible for determining cause of death. And then you have a situation where someone's presumed to have died in their sleep. And because they haven't been admitted to a hospital within 72 hours under state law, they'd like to have an autopsy done, an autopsy's done, and they find out that the death is based on asphyxiation. Now is it suddenly becoming testimonial or is it not? We submit that gets to precisely the point of why the alternative test proposed by the appellant is not workable. It would depend on how gruesome a murder is, and it would in fact- Is there any doubt that this fellow had been murdered? We submit that- His head was almost severed. Is there any doubt that he was, he certainly didn't fall on a knife, his head was almost severed. He was laying in a pool of blood, his father hadn't seen him for several days, and the police are called, and it's a crime scene, and the ME is called to a crime scene to gather important evidence as to the nature of this individual's death. What other purpose was the ME there for other than to investigate and gather evidence with regard to how this person died and the circumstances of his death? Complying with a statutory mandate to prepare autopsy reports for a wide variety of deaths. Police are mandated to enforce the law, but sometimes they help children in a safety zone, other times they arrest people for DWI. How is, I mean, I don't understand how this primary purpose test advances anything. And I don't understand how it's consistent with James either. We submit the relationship between the medical examiner's office and law enforcement is parallel. But one way to think about it, your honor, is there was a detective, as appellant points out, in the room when the autopsy report was being prepared. If that detective turned to the medical examiner and said, you know what, I just learned that Anthony Greco confessed. We have the crime on video, but he just committed suicide. There will be no prosecution. Say that time of death becomes the cornerstone, the most important fact of the case. Who of the detectives is going to be able to testify as to time of death? No one. Who is the one person that will be able to testify about time of death? The coroner. And so you're saying that an essential element of a crime, which is often time of death, and time of death is important here, is non-testimonial because the coroner's primary purpose is not to investigate crimes. Your honor, this- Is that what you're saying? Not quite, your honor. The reasonable expectation test that is being propounded is one that was rejected by the Supreme Court in Ohio v. Clark and Michigan v. Bryant. In both of those cases, there was no doubt that there was a reasonable expectation that everybody involved knew the statements. There was a substantial likelihood they would be used at a future criminal prosecution. The police officers in Michigan v. Bryant, the teachers in Ohio v. Clark who had a mandatory reporting obligation to report the child's statements to law enforcement. But instead, there was a primary purpose there that went, that was separate. This is the rabbit hole at Crawford. This is what the Supreme Court's given us, is this rabbit hole that now we're trying to ferret out everything, whether it's testimonial or not. But now we're in the rabbit hole, so that's where we live, in Wonderland. So, but I don't understand how the primary purpose advances the underpinnings of what Crawford wants us to do. You're saying that you just kind of look at the regular duties as laid out in statute and that then tells us whether it's testimonial or not. It is certainly an interesting area of the law, your honor, and not suggesting the test is perfect. But it does rely on objective factors, whereas the test that has been proposed by the appellant relies on unworkable, subjective factors about expectation and would turn the confrontation clause into a statute of limitations, not just for murder, but for certain types of murder. Whether the murder was covert, well maybe then you can have another medical examiner testify. But if it's sufficiently gruesome, well then you can't prosecute a cold case murder. We submit that that's not the right result here. But to Judge Corman's point, even if there was error here, it was clearly harmless. Appellant barely even attempts to establish that the evidence in question, the medical examiner evidence, was significant in this trial. And in fact, it was, if anything, helpful to the defense. The evidence was arguably probative only on two points. Appellant doesn't claim otherwise. Time of death and cause of death. With respect to cause of death, there was no conceivable doubt as to what the cause of death was. The victim was partially decapitated. Other evidence in the case established that, and the defense conceded it from the outset. With respect to time of death, the government's theory was that Greco traveled and committed the murder on the evening of August 26th of 2014. The defense advanced the implausible theory throughout the trial that the cooperator, Sean Ingram, returned either later that night or the following morning and committed the murder. Dr. Gill testified at trial that the findings in the autopsy report were equally consistent with the murder occurring, the time of death occurring, either on the evening or night of August 26th or on the following day. Tellingly, in the defense summation, the defense argued to the jury that one of the reasons you can buy our theory that Ingram committed the murder is you heard from Dr. Gill that the time of death could have been either day. On the flip side, in the government's rebuttal, when one of my colleagues ran through a litany of points as to why the theory that Ingram was the killer made no sense. Not once did the government mention Dr. Gill. Why? Because his testimony was not helpful to the government on this point. So Dr. Gill's testimony was at most an aside during this trial. And if anything, it was helpful to the defense. And in the face of what was otherwise overwhelming evidence of the defendant's guilt, any error here was clearly harmless. Your Honor, with respect to the hearsay issue that's been raised on appeal, Judge Karras was correct and he certainly did not abuse his discretion in precluding the defendant from testifying to what was a rank hearsay assertion that a third party, the cooperator, Sean Ingram, was in fact the killer. The trial transcript shows, and this is at 1167, beginning at 1167 in the appendix. Judge Karras did two things. First, as an experienced district judge, he recognized this for what it was, hearsay. He also assessed, in accordance with Reyes, perhaps without explicitly mentioning the name of the case, he assessed the probative value of the purported non-hearsay purpose effect on state of mind and found that to be extremely low. And he assessed the risk of prejudice of the statement being considered for its truth, which in this case was extraordinarily high. And he therefore precluded the defendant from testifying to the hearsay assertion. He did not abuse his discretion. Thank you. Thank you very much. Thank you, Your Honor. I just want to very briefly return to the subject of prejudice to the defendant on the Crawford issue. In James itself, the court states a harmless error standard. The strength of the prosecution's case, the prosecutor's conduct regarding the evidence, the importance of the wrongly admitted evidence, whether the evidence was cumulative of other properly admitted evidence. And so on the last point, whether the evidence was cumulative of other evidence on the subject of time of death, the testimony was not cumulative of any other evidence, certainly not any other scientific neutral evidence. Yeah, but as is argued, it's not disadvantageous to the defendant. Well, the evidence should never have been in the trial at all. If we imagine- Well, if there was no evidence as to the time of death, that does not mean that the deceased was immortal. No, that's correct, Your Honor. But what it does mean is that the government is deprived of having this neutral scientific evidence to corroborate its cooperatives. It's true that the ME on cross-examination, the ME witness left some room to run. As to the cause of death, I mean, decapitation is always fatal. There's no doubt about the cause of death being plenty of evidence of the cause of death, crime scene photos and other things. It's really the question of the time of death and whether in the context of the overall strength of the government's case, whether the government should have been allowed to offer the only neutral scientific evidence it did in a Crawford violation, in a confrontation clause violation. And in a trial like this, where the only people pointing the finger at the defendant are people like Beatty, who'd already had a cooperation agreement torn up, who admitted to destroying evidence of the crime, you need, as the prosecutor, to get as much neutral and scientific evidence, as much law enforcement evidence. And they did that by calling for trial strategy purposes, we now know, somebody who did not perform this autopsy or write the report. So there was prejudice to the defendant. Thank you. Thank you very much, gentlemen. Thank you both. Well, a reserve decision.